# United States Court of Appeals

*for the*

# Third Circuit

Case No. 22-2771

DESHAWN DRUMGO,

*Plaintiff-Appellant,*

– v. –

SGT. WILLIAM KUSCHEL,

*Defendant-Appellee.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE IN CASE NO. 1-14-CV-01135
HONORABLE COLM F. CONNOLLY, DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT
## AND JOINT APPENDIX
### Volume 1 of 2 (Pages A1 to A27)

RYAN A. RICHMAN
CONNOR E. PHALON
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
rrichman@mccarter.com
cphalon@mccarter.com

– and –

DEAN A. ELWELL
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
(617) 449-6500
delwell@mccarter.com

KATE R. BUCK
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
kbuck@mccarter.com

*Attorneys for Plaintiff-Appellant*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENTS ....................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF RELATED CASES .....................................................1

CONCISE STATEMENT OF THE CASE .................................................2

SUMMARY OF THE ARGUMENT ......................................................5

STANDARD OF REVIEW ..................................................................6

ARGUMENT ....................................................................................6

     I.     The District Court Misapplied *State Farm*...........................6

          A.     Reprehensibility ........................................................7

          B.     Disparity ...................................................................13

     II.    The District Court Failed to Accord Proper Deference to the Jury's Fact-Finding and Reduce the Award Only by an Amount Necessary to Satisfy Due Process ........................16

CONCLUSION ................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) ...................................................................8

*Barry v. Edmunds*,
116 U.S. 550 (1886) ...............................................................................17

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ..................................................................... 13, 15

*Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*,
801 F.3d 347 (3d Cir. 2015) .............................................................7, 9

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*,
499 F.3d 184 (3d Cir. 2007) ............................................................ 7, 12

*Cleveland v. Curry*,
Case No. 07-cv-02809-NJV, 2014 WL 690846 (N.D. Cal. Feb. 21, 2014).........10

*Day v. McDonough*,
547 U.S. 198 (2006) .................................................................................8

*Day v. Woodworth*,
54 U.S. 363 (1851) .................................................................................17

*Drumgo v. Kuschel*,
684 F. App'x 228 (3d Cir. Mar. 27, 2017) ............................................3

*Drumgo v. Kuschel*,
811 F. App'x 115 (3d Cir. May 11, 2020) .............................................3

*Dunn v. HOVIC*,
1 F.3d 1371 (3d Cir.), *as modified* 13 F.3d 58 (3d Cir. 1993) .......... 15, 17, 18, 19

*Fisher v. Volz*,
496 F.2d 333 (3d Cir. 1974) ......................................................... 18, 19

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
974 F.3d 408 (3d Cir. 2020) ...................................................................9

*Gov't of the V.I. v. Mills*,
821 F.3d 448 (3d Cir. 2016) .................................................................18

*Jester v. Hutt*,
    937 F.3d 233 (3d Cir. 2019) ................................................................ 6, 7, 13, 19

*Lampley v. Onyx Acceptance Corp.*,
    340 F.3d 478 (7th Cir. 2003) .................................................................16

*Lee v. S. Home Sites Corp.*,
    429 F.2d 290 (5th Cir. 1970) .................................................................18

*Pac. Mut. Life Ins. Co. v. Haslip*,
    499 U.S. 1 (1991) ...................................................................................15

*Pichler v. UNITE*,
    542 F.3d 380 (3d Cir. 2008) ..................................................................18

*Ramos v. Louisiana*,
    140 S. Ct. 1390 (2020) ..........................................................................8

*Ricks v. Shover*,
    891 F.3d 468 (3d Cir. 2018) ........................................................... 14, 15

*Simko v. U.S. Steel Corp.*,
    992 F.3d 198 (3d Cir. 2021) ..................................................................8

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
    538 U.S. 408 (2003) ....................................................................... *passim*

*United States v. Jimenez*,
    512 F.3d 1 (1st Cir. 2007) ......................................................................8

*United States v. Wilder*,
    134 F. App'x 527 (3d Cir. June 6, 2005) ..............................................9

*Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*,
    399 F.3d 224 (3d Cir. 2005) ........................................... 16, 17, 18, 19

*Wood v. Milyard*,
    566 U.S. 463 (2012) ..............................................................................8

## Statutes & Other Authorities:

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

42 U.S.C. § 1983 ......................................................................................1, 2

Fed. R. Civ. P. 50(b) ..................................................................................4

Del. Dep't of Corr., Recruiting, *Correctional Officer Pay Scales FY 2022*, https://doc.delaware.gov/assets/documents/FY22_U10_Payscales.pdf)................11

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., *Sexual Victimization Reported by Adult Correctional Authorities, 2016–2018* (June 2021), https://bjs.ojp.gov/library/publications/sexual-victimization-reported-adult-correctional-authorities-2016-2018........................................................14

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., *Substantiated Incidents of Sexual Victimization Reported by Adult Correctional Authorities, 2016–2018* (Jan. 2023), https://bjs.ojp.gov/library/publications/substantiated-incidents-sexual-victimization-reported-adultcorrectional......................................14

## JURISDICTIONAL STATEMENTS

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Civil Rights Act, 42 U.S.C. § 1983 *et seq.* A48.  Following a jury trial, judgment entered on December 16, 2021 for appellant DeShawn Drumgo ("Drumgo") and against appellee Sgt. William Kuschel ("Kuschel").  A375–A377, A378.  On August 24, 2022, the district court modified the judgment in its memorandum opinion, A3, and accompanying order ("Order"), A27.  The Order reduced the jury's punitive damages award on the basis that it violated the Due Process Clause of the Fourteenth Amendment.  A3–A27.  On September 21, 2022, Drumgo filed a timely Notice of Appeal from the Order.  A1–A2.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the district court erred in reducing the jury's punitive damages award by 99% on the basis that the award violated the Due Process Clause of the Fourteenth Amendment.  This issue was addressed at A3–A27, A379–A411, A421–A447, A448–A460.

## STATEMENT OF RELATED CASES

This case is related to the following cases in this Court: 16-3308, 19-1917, and 21-3350.

## **CONCISE STATEMENT OF THE CASE**

Drumgo, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, was exiting the dining hall on May 29, 2014 when he was directed to Kuschel, a correctional officer, for a frisk search.  A51.  During this search, Kuschel sexually assaulted Drumgo by grabbing and squeezing his penis.  A51.

Immediately following the assault, Drumgo filed a grievance pursuant to the Prison Rape Elimination Act.  A428.  Shortly thereafter, an internal affairs investigator interviewed only Drumgo and Kuschel—despite the existence of several other percipient witnesses—before declaring the grievance unfounded.  A428–A429.

On September 5, 2014, Drumgo sued Kuschel and other prison staff *pro se* in the United States District Court for the District of Delaware pursuant to 42 U.S.C. § 1983 for violation of his First, Eighth, and Fourteenth Amendment rights.  A48–A50.  On the defendants' motion, the district court dismissed several defendants, ruling that Drumgo had failed to allege their personal involvement or otherwise state a claim against them.  A69–A71.  The remaining defendants, including Kuschel, then moved for summary judgment, arguing that Drumgo had failed to exhaust his administrative remedies.  A77–A167.  The district court granted summary judgment on this basis, A169–A175, and Drumgo timely appealed, A176– A177.

This Court affirmed in part, vacated in part, and remanded for further consideration of Drumgo's Eighth Amendment claim against Kuschel, concluding

that a genuine dispute of material fact existed as to whether Drumgo had exhausted his administrative remedies. A178–A185; *see generally Drumgo v. Kuschel*, 684 F. App'x 228 (3d Cir. Mar. 27, 2017) (per curiam) (non-precedential).

After the case was remanded, Kuschel moved again for summary judgment, A190–A245, which the district court granted, A273–A292. This time, the district court ruled that Kuschel was entitled to Eleventh Amendment immunity in his official capacity and qualified immunity in his individual capacity. A273–A290. Drumgo timely appealed. A293–A294.

Drumgo prevailed again on appeal when this Court affirmed the district court's Eleventh Amendment immunity ruling, vacated its qualified immunity ruling, and remanded for further proceedings. A295–A308; *see generally Drumgo v. Kuschel*, 811 F. App'x 115 (3d Cir. May 11, 2020) (per curiam) (non-precedential). In particular, this Court ruled that the district court had erred in concluding, under the first prong of the qualified immunity analysis, that Drumgo had failed to establish an Eighth Amendment violation. A299–A307. Unlike the district court, this Court recognized that a reasonable juror could conclude that Kuschel's sexual assault was "'objectively, sufficiently intolerable and cruel, capable of causing harm' and that Kuschel had 'a culpable state of mind.'" A305.

The case having been remanded twice, the district court agreed to appoint counsel in June 2020, at which point Drumgo had already made at least eleven

written requests for counsel.   A72–A73, A74–A76, A168, A186–A188, A189, A246–A249, A250–A263, A264–A265, A266–A269, A270–A272, A309–A310, A311–A312.

A two-day jury trial commenced on December 13, 2021.  A313–A315.  On December 15, 2021, the jury returned a verdict in Drumgo's favor, finding as follows: (1) Kuschel "committed an act that violated Mr. Drumgo's Eighth Amendment rights," (2) Drumgo did not "prove he suffered injuries as a result of William Kuschel's act," (3) in addition to $1 nominal damages, the jury wished "to award punitive damages against William Kuschel," and (4) "the amount of punitive damages [it] wish[ed] to award" was $500,000.  A375–A377.  The district court entered judgment on the jury's verdict the next day.  A378.

On January 13, 2022, Kuschel moved pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, Rule 59(a) for a new trial, and Rule 59(e) to alter or amend the judgment.  A379–A411, A448–A460.  Drumgo opposed the motion in its entirety on February 10, 2022.  A421–A447.  The district court denied Kuschel's motion "insofar as it seeks a new trial" and granted the motion "insofar as it seeks to amend the judgment."  A27.  In doing so, the same district court whose decisions had been vacated by this Court on two prior occasions reduced the jury's punitive damages award from $500,000 to $5,000.  A3–A27, A178–A185, A295–A308.

On September 21, 2022, Drumgo filed a timely Notice of Appeal.  A1–A2.

## SUMMARY OF THE ARGUMENT

In this appeal, Drumgo challenges the district court's stunning 99% reduction of a carefully considered punitive damages award for violation of his Eighth Amendment rights.  After more than seven years of protracted litigation, Drumgo finally had his day in court, and he prevailed.  A unanimous jury of his peers found that although he was entitled to no compensatory damages, he was entitled to $1 in nominal damages and $500,000 in punitive damages.  In response to Kuschel's post-trial motion, however, the district court cut the punitive damages award to $5,000.  This was erroneous for two reasons.

First, the trial court revived a previously waived argument and misapplied the governing law, resulting in an unjustified overreliance on case comparisons.

Second, the district court failed to accord proper deference to the jury's fact-finding.  No irregularity occurred in the management of the jury, and it was instructed to consider the evidence rationally and without passion or prejudice.  The district court should not have substituted its view of the appropriate amount of punitive damages for the jury's determination.  Moreover, even if a reduction were necessary—which it was not—the award should have been trimmed of only the unconstitutional excess.  A 99% reduction is beyond the pale.

This Court therefore should vacate the Order amending the judgment or remand with instructions to recalculate the punitive damages award.

## STANDARD OF REVIEW

Review of "a trial court's constitutionally required reduction of damages" is de novo.  *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019).

## ARGUMENT

## I.    The District Court Misapplied *State Farm*.

In *State Farm Mutual Automobile Insurance Co. v. Campbell*, the United States Supreme Court held that courts reviewing the constitutionality of punitive damages awards must consider three "guideposts": "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."[1]  538 U.S. 408, 418 (2003). Where, as here, there are no "civil penalties authorized" by law, the third guidepost

---

[1] The familiar "single-digit ratio analysis" from *State Farm* "does not apply to punitive awards accompanying nominal damages awards."  *Jester*, 937 F.3d at 241–43.

"is not instructive . . . ."[2] *See Jester*, 937 F.3d at 241 n.1 (citing *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007)).

The district court inappropriately resurrected and then misapplied the first guidepost, leading it to overrely on the second. It therefore erred in concluding that the punitive damages award in this case was unconstitutionally excessive.

## A.    Reprehensibility

"The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419 (brackets and quotations omitted). "Because it's so important to this analysis, the Supreme Court has provided further detail on this guidepost, instructing courts to consider the extent to which the following subfactors are satisfied:"

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015).

---

[2] The district court reached this conclusion on different grounds, explaining that "because this case involves a nominal damages award, the analyses for [the second and third] factors are the same . . . ." A19.

Following the jury's verdict against him, Kuschel waived this most important argument in no uncertain terms: "Considering the factual circumstances of the case and the legal authorities governing claims of repeated sexual assault by correctional officers, ***Defendant determined that an argument that the reprehensibility prong is not met would be inappropriate***." A18 n.4 (emphasis added) (quoting A453 n.1); *see Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021) ("Waiver is the intentional abandonment of an argument.").

The district court inappropriately resurrected this argument *sua sponte* in Kuschel's favor. A18 n.4; *see Wood v. Milyard*, 566 U.S. 463, 471 n.5 (2012) (distinguishing waivers from forfeitures and observing that "a federal court has the authority to resurrect only forfeited defenses"); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 n.7 (3d Cir. 2017) (quoting *United States v. Jimenez*, 512 F.3d 1, 7 (1st Cir. 2007) ("A waiver is unlike a forfeiture, for the consequence of a waiver is that the objection is unreviewable.")). Doing so was reversible error. *See Day v. McDonough*, 547 U.S. 198, 202 (2006) ("[W]e would count it an abuse of discretion to override a State's deliberate waiver . . . .").

Not only did the district court revive this waived argument, but it then misapplied the first *State Farm* guidepost by failing to consider the five reprehensibility subfactors. A18–A26. This failure was a violation of the district court's duty to follow *State Farm*, *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1416

8

n.5 (2020) (Kavanaugh, J., concurring) ("[T]he state courts and the other federal courts have a constitutional obligation to follow a precedent of this Court unless and until it is overruled by this Court."), constituting another reversible error, *see United States v. Wilder*, 134 F. App'x 527, 527 (3d Cir. June 6, 2005) (non-precedential) ("A district court commits an abuse of discretion when it fails to follow or misapplies controlling precedent.").

Instead, the district court created a new, citation-free standard downplaying the severity of Kuschel's conduct based on:

> (1) physical duration ("fleeting"); (2) physical nature ("through clothing"); (3) verbal context ("unaccompanied by threats"); and (4) physical violence ("lacking in force sufficient to cause injury").

A18 n.4. This, too, was reversible error. *See Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 974 F.3d 408, 430 (3d Cir. 2020) ("A district court abuses its discretion if its decision rests on an incorrect legal standard, a clearly erroneous factual finding, or a misapplication of the law to the facts.").

The district court's role under *State Farm* was limited to "consider[ing] the extent to which the [reprehensibility] subfactors are satisfied." *See Brand Mktg. Grp. LLC*, 801 F.3d at 363. It was not supposed to find facts and place the sexual assault in this case "very much on the low end of the spectrum of sexual assaults." *See* A18 n.4. And the district court's rationale for this second guessing—a veritable parade of horribles—is untenable.

9

***First***, the district court opined that "[l]eaving in place such an exorbitant award will also dissuade correctional officers from conducting searches they would otherwise perform and lead to the introduction of weapons and contraband into Delaware's prisons." A21.  In *Cleveland v. Curry*, a case deemed similar by the district court, the United States District Court for the Northern District of California rejected the defendants' argument that "the jury's verdict will deter future officers from searching prisoners' groin area and lead to safety issues in prisons," explaining that "on the contrary, the jury award will only deter future officers from deviating from the [corrections] training manual when performing searches, and will deter future officers from squeezing prisoners' scrotums when performing searches." Case No. 07-cv-02809-NJV, 2014 WL 690846, at *10 n.8 (N.D. Cal. Feb. 21, 2014). The same is true here.  Prison frisk searches can be and most often are conducted without involving sexual assault.  The jury's punitive damages award will have no impact on those searches.  It will merely deter correctional officers from going beyond that scope and into the realm of sexual abuse.

***Second***, the district court opined that the jury's award "will also deter competent professionals from seeking out correctional officer positions."  A19. Again, this turns the issue on its head.  Respect for the jury's verdict will not deter "competent professionals" from the industry—it will deter would-be sexual assailants from abusing prisoners.

ME1 44473850v.5

**Third**, raising Kuschel's salary *sua sponte* and without reference to any evidence presented at trial, the district court considered $5,000 to be "significant financial punishment for a Delaware correctional officer." A25 (citing Del. Dep't of Corr., Recruiting, *Correctional Officer Pay Scales FY 2022*, https://doc.delaware.gov/assets/documents/FY22_U10_Payscales.pdf). This was not only inappropriate to raise on Kuschel's behalf, but it is irrelevant, as Kuschel was indemnified by the State of Delaware.[3]

**Finally**, the district court thought that $5,000 was adequate deterrence. A25. Specifically, the district court thought because Kuschel had retired, Drumgo's sexual assault was somehow worth less, and that because Drumgo and two other inmates who testified at trial have not accused **other** officers of sexual assault that no one else ever has or ever will—in effect, that deterrence above $5,000 (**zero** of which Kuschel had to pay out of pocket) serves no purpose. A25–A26. The jury had already decided the proper level of deterrence. The district court was wrong to reassess it.

---

[3] The district court was informed of this undisputed fact on January 18, 2022, when Kuschel filed a Motion to Stay Proceedings to Enforce a Judgment. A412–A417. Kuschel there admitted, among other things, that his "personal financial condition has no bearing on the State of Delaware's obligation and ability to pay a judgment" and that "the Court should have a high confidence that funds are available because the funds are from the State of Delaware." A415–A416. The district court even entered a stipulated order recognizing that Kuschel had represented that "the State of Delaware has agreed to indemnify Defendant." A418–A420.

Had the district court duly applied the five reprehensibility subfactors, it would have determined that they support upholding the jury's punitive damages award. Indeed, this Court has a sufficiently developed record to apply them now.

The first factor is clearly met, as a sexual assault results in physical as opposed to economic harm. The second and fifth factors are satisfied as well, as the jury was instructed to award punitive damages only if it found that the sexual assault was done "maliciously or wantonly . . . ." A338–A339. The third factor is met because as an inmate, Drumgo was not only financially vulnerable, but also physically, emotionally, and socially vulnerable as he relied on correctional officers like Kuschel to maintain a safe environment (indeed, through such measures as the kind of search that led to his sexual assault). Finally, the fourth factor is satisfied because the jury heard evidence that Kuschel had sexually assaulted other inmates as well. A438. That is, Kuschel's misconduct "extend[ed] beyond his dealings with the plaintiff." *See CGB*, 499 F.3d at 191.

This Court therefore should conclude that the five reprehensibility factors weigh in Drumgo's favor and vacate the Order amending the judgment. Alternatively, this Court should remand for the district court's application of the five reprehensibility factors and recalculation of the punitive damages award.

## B.    Disparity

When analyzing the constitutionality of punitive awards, "higher ratios between nominal and punitive awards are to be expected." *Jester*, 937 F.3d at 242 (quotations omitted).  In an effort to find "limits and proportions," courts will often compare a punitive award to "punitive awards examined by courts in similar cases . . . ." *Id.* (brackets and quotations omitted).  "This approach accords with the Supreme Court's characterization of the ratio guidepost as providing an 'indicium of an unreasonable or excessive punitive damages award.'" *Id.* at 243 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996)).

Here, the district court relied on three unpublished, out-of-circuit trial court decisions from 2014, 2015, and 2018.  A19–A21.  Based on these cases, the district court concluded that "a $5,000 punitive damages award is consistent with *State Farm*'s 'guideposts' and achieves an appropriate level of punishment and deterrence under the facts of this case."  A25.

But the district court overlooked a paramount issue: times change, and juries change with them.  That immemorial concept, *tempora mutantur, nos et mutamur in illis*, applies with particular force in prisoner sexual assault cases following this Court's recognition in 2018 that "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment.  Sexual abuse invades the most basic of dignity interests: to be treated

as a human being.  We condemn such abuse as it is simply not part of the penalty that criminal offenders pay for their offenses against society." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (citations and quotations omitted).

Juries today treat prisoner sexual assault cases with increased care, and rightfully so—the problem is worsening.  Inmate sexual victimization in the United States has risen 180% from 2011 to 2015 and a further 14% from 2015 to 2018.  U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., *Sexual Victimization Reported by Adult Correctional Authorities, 2016–2018* 1 (June 2021), https://bjs.ojp.gov/library/publications/sexual-victimization-reported-adult-correctional-authorities-2016-2018.  Between 2016 and 2018, there were 2,229 substantiated incidents of inmate sexual victimization perpetrated by prison staff. U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., *Substantiated Incidents of Sexual Victimization Reported by Adult Correctional Authorities, 2016–2018* 1 (Jan. 2023), https://bjs.ojp.gov/library/publications/substantiated-incidents-sexual-victimization-reported-adult-correctional.  Nearly two-thirds of these incidents occurred at the hands of correctional officers or supervisory staff.  *Id.*

Despite their increased frequency, very few substantiated incidents ever see the light of day.  Between 2016 and 2018, just 38% of sexual misconduct incidents and 5% of sexual harassment incidents resulted in legal action.  *Id.* 14.  Put another

way, 62% of sexual misconduct incidents and 95% of sexual harassment incidents led to no legal action whatsoever.  *Id.*

Critically, 99% of staff-on-inmate sexual victimizations between 2016 and 2018 did not result in physical injury.  *Id.*  In other words, inmates who suffer sexual abuse at the hands of prison staff virtually never receive compensatory damages.  *Id.*

Against that backdrop, a jury's punitive damages award in a case such as this should be respected.  Juries calculate punitive damages both to "punish the defendant and [to] deter it and others from similar conduct in the future."  *Dunn v. HOVIC*, 1 F.3d 1371, 1380 (3d Cir.) (en banc), *as modified* 13 F.3d 58 (3d Cir. 1993).  That is precisely what happened here.

Moreover, a jury's punitive damages award should not be considered presumptively excessive, and therefore a violation of Due Process, simply because other, earlier cases with somewhat related fact patterns resulted in smaller awards. Due Process does not create a singular "correct" amount of punitive damages for a given type of case.  *See Gore*, 517 U.S. at 582–83 (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991)) (refusing to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case").  Instead, the reasonableness of a jury's punitive damages award must be determined from the perspective of the reasonable juror summoned from today's society.  No doubt society has become less tolerant of sexual assault since 2018.  To

this end, the district court's overreliance on three unpublished, out-of-circuit trial court

decisions from 2014, 2015, and 2018 was misguided.  Under its rationale, the first

punitive damages award in a particular type of case—here, the sexual assault of a

clothed prisoner by a correctional officer—would set the parameters for *all* future

awards for similar cases.  This cannot and should not be correct.  *See Lampley v. Onyx

Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003) ("Awards in other cases provide

a reference point that assists the court in assessing reasonableness; they do not

establish a range beyond which awards are necessarily excessive.").

Plainly stated, nothing in our Constitution requires courts to stifle

accountability in deference to old cases shaped by old worldviews.  Conduct

incompatible with evolving standards of decency should be punished accordingly, and

that is what the jury did here.  Just as there is no doubt that the district court would

have awarded less had it been the trier of fact, there is no doubt that the jury *was* the

trier of fact, and its determination was reasonably calculated to punish and deter.

## II.    The District Court Failed to Accord Proper Deference to the Jury's Fact-Finding and Reduce the Award Only by an Amount Necessary to Satisfy Due Process.

Two years after *State Farm*, this Court held that "[w]hile due process demands

that states guide the discretion of juries contemplating punitive damages awards,

concerns of judicial overreaching dictate that trial judges view jury determinations

of appropriate punitive damages with a measure of deference."  *Willow Inn, Inc. v.*

*Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 231 (3d Cir. 2005) (citations omitted).  An earlier *en banc* panel of this Court categorized that deference as "substantial." *Dunn*, 1 F.3d at 1381.  Thus, where a punitive damages award is "free of irrationality, passion, and prejudice, and falls within the broad discretion in authorizing and limiting permissible punitive damages awards lodged with state legislatures, a trial judge should not substitute his or her view of the appropriate amount of punitive damages for the jury's determination." *Willow Inn*, 1 F.3d at 1381 (citations and quotations omitted).

This is consistent with the maxim that punitive damages awards have "been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case."  *See Day v. Woodworth*, 54 U.S. 363, 371 (1851).  Indeed, every trial is a unique, fact-intensive exercise, and the jury bears the burden of collectively deliberating and agreeing on the proper sum to award.  *See Barry v. Edmunds*, 116 U.S. 550, 565 (1886) ("For nothing is better settled than that . . . it is the peculiar function of the jury to determine the amount by their verdict.").  As this Court declared nearly fifty years ago, "although punitive damages are not a favorite in law and are to be allowed only within narrow limits," their allowance "inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent.  Therefore, ***the infliction of such damages, and***

*the amount thereof when inflicted, are of necessity within the discretion of the trier of fact*." *Fisher v. Volz*, 496 F.2d 333, 347 (3d Cir. 1974) (emphasis added) (quoting *Lee v. S. Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970)).  Thus, "decisions regarding punitive damages should be left to the discretion of the jury . . . ." *Pichler v. UNITE*, 542 F.3d 380, 389 (3d Cir. 2008) (quotations omitted).

Kuschel has no basis to argue that the jury's punitive damages award here deserves anything less than substantial deference.  He does not challenge the jury instructions, which instructed the jury to consider the evidence rationally and without passion or prejudice.  A317–A318, A340–A343.  The jury is presumed to have followed these instructions.  *See Gov't of the V.I. v. Mills*, 821 F.3d 448, 463 (3d Cir. 2016).  Kuschel does not contend that any irregularity occurred in the district court's management of the jury.  Kuschel received a fair trial, and he lost.  Neither he nor the district court sets forth any logical reason for concluding that the resulting award fell outside the jury's broad discretion.  *See Willow Inn*, 1 F.3d at 1381.  The district court's failure to accord substantial deference to the jury's punitive damages award therefore constitutes reversible error.  *See id.*; *Dunn*, 1 F.3d at 1381.

Even if a reduction were necessary—which it was not—the district court's 99% reduction went too far.  Where a punitive damages award exceeds a jury's broad discretion, the district court may remit only "the portion of the verdict in excess of the maximum amount supportable by the evidence."  *Dunn*, 1 F.3d at 1381; *see*

*Jester*, 937 F.3d at 243 (quoting *Willow Inn*, 399 F.3d at 231) ("When a court finds a jury's punitive award unconstitutional, it should decrease the award to an amount the evidence will bear, which amount must necessarily be as high—and may well be higher—than the level the court would have deemed appropriate if working on a clean slate."). The district court's near-total reduction here eviscerates the jury's core fact-finding role and fails to serve as meaningful punishment or deterrence, particularly where Kuschel and others similarly situated are and will continue to be indemnified by the State of Delaware. *See Fisher*, 496 F.2d at 347; *Dunn*, 1 F.3d at 1380. This Court therefore should vacate the Order amending the judgment or remand for recalculation under these principles.

## **CONCLUSION**

For the reasons elucidated above, this Court should vacate the Order amending the judgment or remand with instructions to recalculate the punitive damages award.


*[remainder of page intentionally left blank]*

Dated: April 10, 2023
    Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

*/s/ Kate R. Buck*
Kate R. Buck, Esq. (DE # 5140)
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
kbuck@mccarter.com

Ryan A. Richman, Esq.
(NJ # 040062011)
Connor E. Phalon, Esq.
(NJ # 163042015)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
rrichman@mccarter.com
cphalon@mccarter.com

Dean A. Elwell, Esq. (MA # 707149)
265 Franklin Street
Boston, MA 02110
(617) 449-6500
delwell@mccarter.com

*Attorneys for Appellant*
*DeShawn Drumgo*

## **CERTIFICATION OF ADMISSION TO BAR**

I, Kate R. Buck, certify as follows:

      1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

      2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 10, 2023

By: /s/  Kate R. Buck

Kate R. Buck

# **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 4,364 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: April 10, 2023

By: /s/  Kate R. Buck
       Kate R. Buck

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 10th day of April, 2023, the foregoing Brief and Appendix Volume 1 were filed through CM/ECF system and served on all parties or their counsel of record through the CM/ECF system.

Dated: April 10, 2023

By: /s/ Kate R. Buck
Kate R. Buck

**JOINT APPENDIX**
**Volume 1 of 2 (Pages A1 to A27)**

i

**TABLE OF CONTENTS**

**Page**

<u>**Volume 1**</u>

Notice of Appeal, dated September 21, 2022 ............ A1

Memorandum Opinion of the Honorable Colm F.
Connolly, dated August 24, 2022......................... A3

Order of the Honorable Colm F. Connolly, dated
August 24, 2022.................................................... A27

<u>**Volume 2**</u>

District Court Docket Entries .................................... A28

Complaint, filed September 5, 2014 .......................... A47

Order of the Honorable Gregory M. Sleet, dated
November 24, 2014 ................................................ A69

Plaintiff's Motion for Appointment of Counsel,
filed March 3, 2015................................................ A72

Plaintiff's Motion for Appointment of Counsel,
filed March 17, 2015.............................................. A74

Defendant's Motion for Summary Judgment, dated
January 29, 2016.................................................... A77

Defendant's Opening Memorandum of Points and
Authorities in Support of their Motion for
Summary Judgment, dated January 29, 2016 ........ A80

Exhibit A to Opening Memorandum -
Affidavit of William Kuschel, sworn to
January 28, 2016.................................................... A99

ii

**Page**

Exhibit B to Opening Memorandum -
Affidavit of Cheryl Vangorder, sworn to
January 27, 2016 ...................................................... A105

Exhibit C to Opening Memorandum -
Affidavit of Daniel Hutchins, unsworn .................. A108

Exhibit D to Opening Memorandum -
Affidavit of Terrell Ingram, sworn to
January 27, 2016 ...................................................... A111

Exhibit E to Opening Memorandum -
Affidavit of Paul Abernathy, unsworn ................... A114

Exhibit F to Opening Memorandum -
Affidavit of Stanley Baynard, sworn to
January 26, 2016 ...................................................... A117

Exhibit G to Opening Memorandum -
Affidavit of David Alston, unsworn ....................... A121

Exhibit H to Opening Memorandum -
Affidavit of Michael Little, sworn to
January 29, 2016 ...................................................... A124

Exhibit I to Opening Memorandum -
*Smith v. Vidonish* (210 F. App'x 152 (2006)) ......... A128

Exhibit J to Opening Memorandum -
Inmate Grievance Procedures and Policy .............. A134

Exhibit K to Opening Memorandum -
Grievance Report, dated June 29, 2014 ................. A155

Exhibit L to Opening Memorandum -
*Donald M. Durkin Contracting, Inc. v. City of
Newark* (2006 WL 2724882) ................................. A158

Annexed to Opening Memorandum -
Certificate of Service ............................................. A167

iii

|  | Page |
|---|---|
| Plaintiff's Motion for Appointment of Counsel, filed February 22, 2016 | A168 |
| Memorandum of the Honorable Gregory M. Sleet, dated July 22, 2016 | A169 |
| Order of the Honorable Gregory M. Sleet, dated July 22, 2016 | A174 |
| Judgment of the Honorable Gregory M. Sleet, dated July 22, 2016 | A175 |
| Notice of Appeal, dated August 1, 2016 | A176 |
| Judgment of the United States Court of Appeals for the Third Circuit, dated March 27, 2017 | A178 |
| Annexed to Judgment - Opinion of the United States Court of Appeals for the Third Circuit, dated March 27, 2017 | A180 |
| Plaintiff's Motion for Appointment of Counsel, filed April 19, 2017 | A186 |
| Plaintiff's Motion for Appointment of Counsel, filed July 14, 2017 | A189 |
| Defendant's Motion for Summary Judgment, dated September 27, 2017 | A190 |
| Defendant's Opening Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, dated September 27, 2017 | A193 |
| Exhibit I to Opening Memorandum - Opinion of the United States Court of Appeals for the Third Circuit, dated March 27, 2017 (Reproduced herein at pp. A180-A185) | |

iv

**Page**

Exhibit II to Opening Memorandum -
(i) Declaration of William Kuschel, dated
September 20, 2017 ................................................ A214

(ii) Affidavit of William Kuschel, sworn to
January 28, 2016
(Reproduced herein at pp. A99-A104)

Exhibit III to Opening Memorandum -
(i) Declaration of Marc Richman, dated
September 21, 2017 ................................................ A216

(ii) Affidavit of Marc Richman, sworn to
March 21, 2016 ...................................................... A220

Exhibit IV to Opening Memorandum -
Opinion of the United States Court of Appeals for
the Third Circuit, in *Mann v. Palmerton Area
School District* (Case No. 16-2821), dated
September 21, 2017 ................................................ A223

Exhibit VII to Opening Memorandum -
Errata Sheet from Deposition Transcript of
DeShawn Drumgo, Sr., dated November 30, 2015    A243

Annexed to Opening Memorandum -
Certificate of Service ............................................. A245

Plaintiff's Motion for Appointment of Counsel,
filed September 28, 2017 ....................................... A246

Plaintiff's Motion for Injunctive Relief and
Appointment of Counsel, filed October 16, 2017..    A250

Plaintiff's Motion for Injunctive Relief and
Appointment of Counsel, filed
November 17, 2017 ................................................ A264

v

**Page**

Plaintiff's Motion for Scheduling Order and
Appointment of Counsel, filed April 4, 2018 ........  A266

Plaintiff's Motion for Appointment of Counsel and
Discovery, filed March 18, 2019 ..........................  A270

Memorandum Opinion of the Honorable Colm F.
Connolly, dated March 25, 2019............................  A273

Order of the Honorable Colm F. Connolly, dated
March 25, 2019......................................................  A291

Judgment of the Honorable Colm F. Connolly, dated
March 26, 2019......................................................  A292

Notice of Appeal, dated April 14, 2019 .....................  A293

Judgment of the United States Court of Appeals for
the Third Circuit, dated May 11, 2020...................  A295

Judgment with Opinion of the United States Court
of Appeals for the Third Circuit, dated
May 11, 2020 ........................................................  A297

Plaintiff's Motion for Appointment of Counsel,
filed June 8, 2020..................................................  A309

Order Referring Matter for Representation of the
Honorable Colm F. Connolly, dated June 8, 2020 .  A311

Order Recognizing Representation of the Honorable
Colm F. Connolly, dated September 1, 2020 .........  A312

Stipulation and Order Regarding Limited Discovery
and Case Schedule, so-ordered on July 15, 2021 ..  A313

Proposed Final Jury Instructions, dated
December 13, 2021 ................................................  A316

Annexed to Proposed Final Jury Instructions -
Proposed Final Jury Instructions (red-lined) .........  A345

vi

**Page**

Redacted Jury Verdict Sheet, dated
December 14, 2021 ................................................. A375

Judgment of the Honorable Colm F. Connolly, dated
December 16, 2021 ................................................. A378

Defendant's Renewed Motion for Judgment as a
Matter of Law and to Alter or Amend Judgment,
or in the Alternative, for a New Trial, dated
January 13, 2022 ................................................... A379

Memorandum of Law in Support of Defendant's
Renewed Motion for Judgment as a Matter of
Law and to Alter or Amend Judgment, or in the
Alternative, for a New Trial, dated
January 13, 2022 ................................................... A382

Exhibit A to Memorandum of Law -
Excerpt of Order, in *Metzler v. Kurtz* (Superior
Court of New Jersey, Sussex County Docket No.
SSX-L-09-04), dated March 25, 2009 ................... A402

Exhibit B to Memorandum of Law -
Verdict Slip, in *Warren v. Cardenas* (United
States District Court for the Western District of
Pennsylvania Case No. 08-250), dated June 1,
2012 ...................................................................... A404

Exhibit C to Memorandum of Law -
Order of the Honorable Lynne A. Sitarski, in
*Collins v. Chandler* (United States District Court
for the Eastern District of Pennsylvania Case No.
07-0251), dated May 21, 2008 .............................. A407

Annexed to Memorandum of Law -
Certificate of Compliance, with Word Count
Limitations and Typeface Requirements ............... A410

vii

**Page**

Defendant's Motion to Stay Proceedings to Enforce
a Judgment, dated January 18, 2022 ...................... A412

Stipulation and Order to Stay Proceedings to
Enforce Judgment, so-ordered on
February 8, 2022 ................................................... A418

Plaintiff's Brief in Opposition to Defendant's
Renewed Motion for Judgment as a Matter of
Law and to Alter or Amend Judgment, or in the
Alternative, for a New Trial, dated
February 10, 2022 ................................................ A421

Annexed to Brief in Opposition -
Word Count Certification ....................................... A447

Reply Memorandum of Law in Further Support of
Defendant's Renewed Motion for Judgment as a
Matter of Law and to Alter or Amend Judgment,
or in the Alternative, for a New Trial, dated
February 25, 2022 ................................................ A448

Annexed to Reply Memorandum of Law -
Certificate of Compliance, with Word Count
Limitations and Typeface Requirements ............... A459

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DE SHAWN DRUMGO,           )
                                )
             Plaintiff,       )
                                )
       v.                  )
                                )     C.A. No. 14-1135-CFC
SGT. WILLIAM KUSCHEL,     )
                                )
           Defendant.     )

## NOTICE OF APPEAL

Notice is hereby given that De Shawn Drumgo, Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Third Circuit from: the August 24, 2022 Order (D.I. 231) granting in part Defendant William Kuschel's Renewed Motion for Judgment as a Matter of Law and to Alter or Amend Judgment, or in the Alternative, for a New Trial (D.I. 217) and reducing the jury's award of punitive damages to Plaintiff.

Dated: September 21, 2022             McCARTER & ENGLISH LLP

                                        */s/ Kate Buck*
                                        Kate R. Buck, Esq.
                                        Renaissance Centre
                                        405 N. King Street, 8th Floor
                                        Wilmington, DE 19801
                                        (302) 984-6300
                                        kbuck@mccarter.com

Ryan A. Richman, Esq. *(application for admission forthcoming)*
Connor E. Phalon, Esq. *(application for admission forthcoming)*
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
rrichman@mccarter.com
cphalon@mccarter.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DE SHAWN DRUMGO,

                     Plaintiff,

      v.

SGT. WILLIAM KUSCHEL

                   Defendant.

Civil Action No. 14-1135-CFC

---

Daniel M. Silver, Shannon D. Humiston, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, Delaware

     *Counsel for Plaintiff*

Zi-Xiang Shen, Kenneth L. Wan, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

     *Counsel for Defendant*

## **MEMORANDUM OPINION**

August 24, 2022
Wilmington, Delaware

A3

_____
                    COLM F. CONNOLLY
                    CHIEF JUDGE

Pending before me is Defendant William Kuschel's Renewed Motion for Judgment as a Matter of Law and to Alter or Amend Judgment, or in the Alternative, for a New Trial. D.I. 217. When the events that gave rise to this action occurred, Kuschel was a correctional officer and Plaintiff De Shawn Drumgo was a prisoner at the James T. Vaughn Correctional Center (Vaughn) in Delaware. Drumgo sued Kuschel under 42 U.S.C. § 1983 for violating Drumgo's Eighth Amendment right against cruel and unusual punishment during a routine frisk search at the prison. D.I. 191 at 5.

After a two-day trial, a jury found that Drumgo "prove[d] that William Kuschel committed an act that violated Mr. Drumgo's Eighth Amendment rights" but did not "prove that he suffered any injuries as a result of" that act. D.I. 211 at 1. Consistent with the explicit directions on the verdict sheet, the jury therefore awarded Drumgo nominal damages of $1. D.I. 211 at 1. The jury also awarded Drumgo punitive damages of $500,000. D.I. 211 at 2.

Kuschel advances two principal arguments in support of his motion. He argues first that I should grant him a new trial and vacate the judgment against him because I erroneously admitted at trial the testimony of Marvin Burroughs. He argues in the alternative that I should reduce or vacate the punitive damages award.

A4

## I.    THE TRIAL

Drumgo presented five witnesses at trial—himself and four fellow inmates from Vaughn.  Drumgo testified that during a routine frisk search performed on him after he exited Vaughn's dining hall on May 29, 2014, Kuschel grabbed and held onto Drumgo's genitals, causing him physical injuries and long-term mental distress.  Tr. 110:18–111:9, 128:15–130:24.  According to Drumgo, Kuschel "touch[ed]" and then "wouldn't let go" of Drumgo's penis, causing it to "rupture" and suffer "a cut that opened up."  Tr. 111:1–2, 9, 12.  Drumgo testified that when he yelled at Kuschel to "let go" of his genitals, the other correctional officers in the area heard the commotion and "just laughed."  Tr. 112:7.

Inmate Isiah Walker testified that on May 29 he "happened to look over and . . . [saw] Sergeant Kuschel moving his leg, moving his hands up Drumgo's leg, and that's when Drumgo said, you know, you're touching my private parts and such, and that's when the situation happened."  Tr. 211:3–7.  Walker was then asked—without objection from defense counsel—"Did you see him grab and squeeze Mr. Drumgo's groin?" to which Walker responded: "Yes."  Tr. 211:8–9.[1]

---

[1] I expressed numerous times at trial my concerns about leading questions posed to the witnesses in this case.  *See, e.g.,* Tr. 220:16–222:3 ("This is a case about credibility and you have an ethical obligation, attorneys do, not to vouch.  We need to be very careful about that and you need to be very careful about leading questions.  So, you know, the way that direct went was you asked a couple of questions to that witness.  He did not say ["]let go,["] and then you say, ["]did he say [']let go,[?'"] and then he said ["]yes,["] and then you [get] the words ["let

2

Both Walker and inmate Alem Lopez testified that they heard officers laugh after Drumgo yelled for Kuschel to let go of his genitals. Tr. 211:25–212:6, 330:24–331:1. Lopez testified that, like Drumgo, he was frisk searched by Kuschel upon leaving the dining hall on May 29 and that during the search Kuschel "went around my waist and went on the outside of my thighs, went on the inside and went all the way up" "in my privates." Tr. 326:14–327:9, 328:13. Lopez said that because "nobody [had ever] pat[ted] [him] down like that," he "look[ed] back to see how [Kuschel] was patting down other persons." Tr. 327:19–21, 328:9–10. Lopez said that at that point he saw Kuschel frisk searching Drumgo. Tr. 327:15–25. In Lopez's words: "I couldn't really see exactly what

---

go"]. So, and then you actually, you essentially vouched, because you said, when he said ["]let go of my [genitals"] wh[en] there has not been testimony to that [effect]. And I'm just very sensitive to both sides. I am not a fact-finder here, but this is all about credibility of the people who are testifying. And so I just think, and this is going to apply to people on this side of the aisle as well. You need to be very careful about looking like you're endorsing, so when you say ["]thank you very much["] at the end of that [questioning], you need to be careful. You are—we are not to be vouching, and you can vouch without thinking about it by the way you [say] things . . . . And I just think in fairness to Mr. Kuschel and in fairness to Mr. Drumgo, if [Mr. Kuschel's lawyers] tried to pull this, I would be raising the same concerns with the[m] if it was Mr. Kuschel's lawyers that tried to do that. We just need to be very, very sensitive to that. All right? So going forward, I would like everybody to think about avoiding leading questions when you are asking somebody to recount testimony that you know is going to be directly contradicted by testimony of somebody else. All right. So that's why we have the rule about leading questions. All right? So anyway, I'm going to remind Mr. Kuschel's lawyers, you need to be also very, very sensitive to that when you start questioning correctional officers. All right?); Tr. 330: 10–11 ("We don't lead. We don't lead witnesses except on cross-examination.").

3

A6

[Kuschel] was doing to [Drumgo], but he was—I know he was in his inner thigh
and that's when Drumgo was like, [']get off my [genitals.']"  Tr. 330:20–23.

Inmate Curtis Mercer testified that he also saw Kuschel frisk search Drumgo
on May 29.  Tr. 342:3–6.  But when asked to describe what he saw, Mercer
explained that he did not see Drumgo until after he "heard the reaction of Drumgo
snapp[ing]" at Kuschel, at which point he "turned around" and saw Drumgo with
"this shocked look."  Tr. 342:21–23.  Mercer did not testify that he heard officers
laughing.

A final inmate, Marvin Burroughs, testified that Kuschel groped his genitals
during three frisk searches conducted in the fall of 2013.  Tr. 225:10–226:8, 227:4–
24.

Kuschel testified along with five other defense witnesses at trial.  Kuschel
denied that he assaulted Drumgo, Burroughs, or any other inmate during his years
as a correctional officer.  Tr. 250:25–251:5.  He also testified that an internal
investigation by Vaughn into Drumgo's allegations had "cleared [him] of all
wrongdoing."  Tr. 250:22–24.

A former correctional officer, Paul Abernathy, testified that he had worked
with Kuschel at Vaughn, that he had no recollection of Kuschel ever sexually
assaulting an inmate, and that he would have recalled any occasion where a fellow
correctional officer "violently grabb[ed] an inmate's genitals during a search."  Tr.

4

A7

276:14–19.  Correctional Officers Franchot Wallace, Sheryl VanGorder, and Jason Schaffer testified that they had observed Kuschel perform searches at Vaughn and that they had never "perceive[d] any issues with how Mr. Kuschel performed frisk searches."  Tr. 260:21–261:1, 286:13–18, 353:20–25.

Correctional Officer Stanley Baynard testified that he conducted Vaughn's internal investigation that cleared Kuschel of Drumgo's sexual assault allegation. Tr. 290:14–293:16.  Baynard acknowledged that as many as 20 to 25 inmates and at least two other correctional officers besides Kuschel witnessed the incident, but that he interviewed only Drumgo and Kuschel for his investigation.  Tr. 308:10–309:23.  He also testified that the cameras in the area in which Kuschel's search of Drumgo occurred were not set up to record and only allowed for live monitoring. Tr. 315:5–316:5.

## II.    LEGAL STANDARDS

### A.    Rule 50(b)

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  A motion filed under Rule 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is

insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

### B.   Rule 59(a)

Pursuant to Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Fed. R. Civ. P. 59(a).  One ground for a new trial is the erroneous admission of evidence that resulted in manifest injustice.  *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (holding that a motion for a new trial "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence.").  If the court concludes that a challenged evidentiary ruling was in fact erroneous, it must "grant a new trial unless it was 'highly probable' that the error did not affect any 'substantial rights.'"  *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 189 (3d Cir. 1990) (quoting *McQueeny v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985)).  "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court."  *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).

### C.   Rule 59(e)

Rule 59(e) permits a party to file "a motion to alter or amend a judgment." "A proper motion to alter or amend judgment must rely on one of three major

A9

grounds: (1) an intervening change in controlling law; (2) the availability of new

evidence not available previously; or (3) the need to correct clear error of law or

prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d

1194, 1218 (3d Cir. 1995) (citations, internal quotation marks, and brackets

omitted).

## III.    DISCUSSION

### A.    The Admission of Burroughs's Testimony at Trial

I admitted Burroughs's testimony over Kuschel's objections pursuant to

Rule 415, which permits a court to "admit evidence that the party committed any

other sexual assault . . . [i]n a civil case involving a claim for relief based on a

party's alleged sexual assault." Fed. R. Evid. 415. The Third Circuit's

> approach to the admissibility of past acts involving
> sexual assault [under Rule 415] is set out in *Johnson v.*
> *Elk Lake School District*, 283 F.3d 138 (3d Cir. 2002).
> First, the trial court must decide "whether a reasonable
> jury could find by a preponderance of the evidence that
> the past act was an 'offense of sexual assault' under Rule
> 413(d)'s definition and that it was committed by the
> defendant." *Id.* at 154–55. Then, the trial court "may
> still exclude [the evidence] under Federal Rule of
> Evidence 403" if "its probative value is substantially
> outweighed by the danger of unfair prejudice, confusion
> of the issues, or misleading the jury, or by considerations
> of undue delay, waste of time, or needless presentation of
> cumulative evidence." *Id.* at 155 (quoting Fed. R. Evid.
> 403). That balancing test should place "a thumb on the
> scale in favor of admissibility" if the past act is
> "demonstrated with specificity" and "is sufficiently
> similar to the type of sexual assault allegedly committed

> by the defendant." *Id.* at 155–56.  Otherwise, there is no
> presumption of admissibility.  *Id.* at 156.  In any case,
> even in this context "the Rule 403 balancing inquiry is, at
> its core, an essentially discretionary one that gives the
> trial court significant latitude to exclude evidence."  *Id.*

*Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 168 (3d Cir. 2017) (second

alteration in the original).

Kuschel argues that I committed legal error because I allowed Burroughs to

testify at trial without "hear[ing] Burroughs'[s] testimony prior to trial to determine

(1) whether his allegations constituted sexual assault under Rule 413 and (2)

whether his allegations were 'substantially similar' to Plaintiff's claims."  D.I. 218

at 4; *see also* D.I. 218 at 7 (arguing that the Court made an "error of law in

admitting Burroughs['s] testimony without making predicate findings as required

by FRE 415").  This argument fails for two reasons.

First, Kuschel waived the argument.  Before trial, Drumgo's counsel stated

in a letter filed with the Court that Drumgo intended to call Burroughs as a witness

at trial and that Burroughs would testify that he was "subjected to frisk searches

that were performed by the Defendant" and that "during a frisk search performed

by [Kuschel]" within one year of Kuschel's alleged assault of Drumgo, Kuschel

"grabbed and squeezed [Burroughs's] groin in the same manner alleged by

[Drumgo]."  D.I. 205 at 1; *see also* D.I. 205 at 2 ("Mr. Burroughs will testify that

Defendant grabbed and squeezed his groin – in the same manner at issue in this

8

A11

case – which would constitute an offense of sexual assault under Rule 413."); D.I.

205 at 3 ("Both [Drumgo] and Mr. B[u]rroughs are inmates at the James T.

Vaughn Correctional Center, both were subjected to frisk searches after exiting the

dining hall that were performed by [Kuschel], and both inmates had their groin

grabbed and squeezed by [Kuschel] in an inappropriate and sexual manner.  These

events occurred less than a year apart.").  During the ensuing oral argument on the

admissibility of Burroughs's testimony, the following exchange occurred:

> [Counsel]: . . . [T]he Court has to make a determination
> that, you know, the proposed testimony is that it's the
> same conduct.  You know, there's a clear sexual assault
> that happened *and I just don't think we have that
> because all we have is plaintiff's word that, oh, this is
> what Mr. Burroughs would testify to*, but it's –
>
> THE COURT: *Well, we can get a proffer from Mr.
> Burroughs to take care of that.  I mean, is that a proffer
> from Mr. Burroughs as opposed to the defendant?
> Does that take care of it?*
>
> [Counsel]: *No, Your Honor*.

Tr. 19:22–20:7 (emphasis added).  Notably, Kuschel's counsel never again argued

or suggested in any way that it was necessary for me to hear *in limine* directly from

Burroughs the substance of his testimony to decide if the acts Burroughs attributed

to Kuschel constituted sexual assault under Rule 413.  Nor did Kuschel's counsel

ever argue or suggest in any way that I needed to hear *in limine* directly from

Burroughs to decide if Burroughs's allegations were "substantially similar" to the

9

A12

acts Drumgo accused Kuschel of.  *See* D.I. 226 at 2 ("Defendant acknowledges

that at the time of trial, he did not view a 'proffer' from Burroughs as sufficient to

address his concerns and that he did not re-assert a specific objection at the time of

Burroughs'[s] testimony.").  For that reason, I focused on whether Kuschel was

unfairly prejudiced by the admission of Burroughs's testimony under Rule 403;

and, because his counsel never articulated a basis for a finding of unfair prejudice[2]

---

[2] Kuschel's counsel stated that "allowing a plaintiff to just parade in front of the
jury a line of witnesses to accuse defendant of sexual assault is extremely
prejudicial in light of the social stigma of being labeled or seen as a sexual
predator."  Tr. 18:12–16.  But Congress made the decision when it enacted Rules
413–15 to allow defendants accused of sexual assault to suffer this form of
prejudice.  That decision was, and remains, controversial; and it is clearly at odds
with Rule 404(b), which prohibits the use of "any other crime, wrong, or act . . . to
prove a person's character in order to show that on a particular occasion the person
acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  As the Third
Circuit noted in *Johnson*:

> Ever since their initial proposal, Rules 413–15 have been met with
> hostility by the legal establishment.  *See* Judicial Conference of the
> U.S., *Report of the Judicial Conference on the Admission of
> Character Evidence in Certain Sexual Misconduct Cases*, 159 F.R.D.
> 51, 52 (1995) [hereinafter Judicial Conference Report] (observing the
> opposition of an "overwhelming majority of judges, lawyers, law
> professors, and legal organizations" to the proposed rules);
> Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence Under the
> Rules* 475 (3d ed.1996) (noting that "the professional reaction to
> [Rules 413–15] has been strongly negative").  Although Congress
> bypassed the ordinary rulemaking procedures when adopting Rules
> 413–15, the enacting legislation provided the Judicial Conference 150
> days within which to make and submit alternative recommendations
> on the rules to Congress.  The Judicial Conference's Advisory
> Committee on Evidence Rules, with what it noted was "highly
> unusual unanimity," ardently opposed the new rules, fearing that they

or stated or suggested in any way that the admission of Burroughs's testimony

would confuse the issues, mislead the jury, cause undue delay, waste time, or

present cumulative evidence, I made the discretionary call to admit the testimony.

*See* Tr. 18:7–31:15; *see also* Fed. R. Evid. 403 ("The court may exclude relevant

evidence if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury,

undue delay, wasting time, or needlessly presenting cumulative evidence.").

---

> "could diminish significantly the protections that have safeguarded
> persons accused in criminal cases and parties in civil cases against
> undue prejudice." *Judicial Conference Report*, 159 F.R.D. at 53.
> Embracing the views of the Advisory Committee, the Conference
> recommended that Congress "reconsider its policy determinations
> underlying Evidence Rules 413–415" or, in the alternative, adopt
> amendments to Rules 404 and 405 proposed by the Advisory
> Committee. *Id.* at 54.  Congress rejected both alternatives, and the
> rules stand today as originally enacted.

283 F.3d at 151 (brackets in the original).

Precisely because I think Rule 415 is fundamentally flawed, I implored
Kuschel's counsel to state on the record how Kuschel was unfairly prejudiced by
allowing Burroughs to testify at trial. *See, e.g.,* Tr. 29:14–22 ("[T]his is why I
opened up by asking what's your prejudice.  For instance, you didn't say, well,
they never disclosed . . . Burroughs, and we litigated the case, we took discovery
and we didn't follow up [on Burroughs's alleged assault], and therefore even if
they met [Rule 415(b)'s] 15-day [disclosure] requirement, we're still prejudiced
because we never had a chance to look to see if there w[as] any video evidence to
rebut [Burroughs] or find out who was on duty or if you don't know the date of the
assault, right?); Tr. 30:7–11 ("You have to articulate, well, what is the unfair
prejudice?  That's why I asked, was Burroughs disclosed in initial disclosures, and
you're not putting anything on the record. I mean, now you're starting to, but you
have to kind of come in and say what is the prejudice.").

Having failed to take up my offer to hear directly from Burroughs *in limine* and having failed to renew any objection during Burroughs's testimony at trial, Kuschel waived the ability to argue now that I should have heard Burroughs *in limine* before admitting his testimony under Rule 415. *See Orexo AB v. Actavis Elizabeth LLC*, 424 F. Supp. 3d 371, 382 (D. Del. 2019) ("Having failed to raise before or during trial that the . . . analysis I employed in granting Actavis's motion in limine needed to be redone in light of [subsequent developments in] the case, Orexo cannot now raise that issue in a Rule 59 motion.").[3]

---

[3] Kuschel also argues for the first time in his brief filed in support of his motion that Burroughs's testimony at trial differed "substantively" from the proffer of the testimony given by Drumgo's counsel. D.I. 218 at 5. This argument also was waived, as Kuschel failed to lodge an objection to Burroughs's testimony at trial. But in any event, the differences between Burrough's trial testimony and the proffer are not material. Kuschel complains that Burroughs said at trial that Kuschel "groped" his genitals whereas Drumgo's counsel proffered that Burroughs would testify that Kuschel "grabbed and squeezed" his genitals. This seems to me a distinction without a difference. D.I. 218 at 5. And given that the jury found Kuschel liable for an Eighth Amendment violation but rejected Drumgo's testimony that his genitals were ruptured by Kuschel's grabbing and squeezing, it appears that Burroughs's testimony—which is identical to Lopez's testimony—may have benefitted Kuschel.

Kuschel also takes issue with the fact that Burroughs testified that Kuschel groped him on three occasions whereas Drumgo's counsel's proffer seemed to suggest that Burroughs would testify that Kuschel assaulted Burroughs only once. The proffer, however, was more ambiguous that Kuschel allows. Drumgo's counsel said that Burroughs and Drumgo were both "subjected to frisk searches" (plural), D.I. 205 at 1, and although counsel stated that Burroughs would testify that he was assaulted during a search that occurred within a year of Kuschel's assault of Drumgo, the proffer did not exclude the possibility that Burroughs was groped during the other routine searches Kuschel performed on Burroughs. In any

A15

Second, nothing in *Johnson* or *Bernard* suggests in any way that a court cannot admit testimony under Rule 415 unless it has first heard that testimony from the witness outside the presence of the jury. On the contrary, the Court held in *Johnson* that although district courts "*might* find" an *in limine* hearing to be helpful, "an *in limine* hearing *is not required* . . . for considering the admission of evidence proffered under Rule 415." 283 F.3d at 157 n.16 (emphasis added); *accord United States v. Abrams*, 761 F. App'x 670, 676 (9th Cir. 2019) (holding that "an evidentiary hearing outside the presence of the jury is not required" to admit evidence under Rule 413 and that "the threshold preponderancy requirement for admission of prior-bad-acts evidence [under Rule 413] can be based on evidence proffered by the government other than live witness testimony"). In this case, especially since Kuschel's counsel had declined my invitation to obtain a proffer directly from Burroughs, I did not think an evidentiary hearing would prove useful. Burroughs's account of Kuschel's acts proffered by Drumgo's counsel was virtually identical to Drumgo's assault claim. Both men alleged that Kuschel frisk searched them when they left Vaughn's dining hall and both men alleged that Kuschel fondled their genitals when he searched them. Thus, Burroughs's

---

event, given the fleeting nature of the searches, I do not think the fact that Burroughs testified at trial that he was groped three times as opposed to one time was significant.

13

A16

allegations were substantially similar to Drumgo's claims.  Moreover, Kuschel's

counsel never suggested—and still does not contend—that nonconsensual groping

of a person's genitals does not constitute sexual assault under Rule 413.  *See* Fed.

R. Evid. 413(d)(2) (defining "sexual assault" to "mean[ ] a crime under federal law

or under state law . . . involving . . . contact, without consent, between any part of

the defendant's body . . . and another person's genitals").  In addition, nothing was

said during oral argument to suggest that Burroughs would give testimony at trial

materially different from the proffer given by Drumgo's counsel.  Thus, the proffer

provided a basis on which to conclude that a jury could reasonably find by a

preponderance of the evidence that Kuschel sexually assaulted Burroughs in

substantially the same way that Drumgo alleged Kuschel assaulted him.  For these

reasons, as noted above, I focused on the question of whether Kuschel was unfairly

prejudiced by the admission of the testimony such that it might be barred by Rule

403.  Kuschel has not identified, and I do not see, any legal error in my Rule 403

calculus, and therefore I will deny his request for a new trial.

**B.    The Punitive Damages Award**

Kuschel argues that the jury's award of $500,000 in punitive damages

violates the Due Process Clause of the Fourteenth Amendment and must be

vacated or reduced as a matter of law.  D.I. 218 at 7.  Alternatively, he asks that I

exercise the discretion afforded me by Rule 59 and remit the award as unsupported by the evidence and excessive. D.I. 218 at 7.

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In the usual case where a party challenges a punitive damages award on due process grounds, the court is required "to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418. In this case, Kuschel does not dispute that the conduct for which the jury found him liable is reprehensible, and, for reasons that escape me, his counsel did not expressly address in their briefing the degree of the reprehensibility of Kuschel's conduct.[4] That leaves for

---

[4] Kuschel's counsel, who are employed by the Delaware Attorney General's Office, state in their reply brief that "[c]onsidering the factual circumstances of the case and the legal authorities governing claims of repeated sexual assault by correctional officers, Defendant determined that an argument that the reprehensibility prong is not met would be inappropriate." D.I. 226 at 3 n.1. But *State Farm*'s first guidepost calls on courts to assess *the degree* of reprehensibility. This is not a binary test that is either met or not met. Although all sexual assaults are reprehensible, there are degrees of sexual assault; and the assault in this case—fleeting, through clothing, unaccompanied by threats, and lacking in force sufficient to cause injury—is very much on the low end of the spectrum of sexual

consideration the second and third guideposts; but because this case involves a

nominal damages award, the analyses for these factors are the same, and under

Third Circuit precedent I am to rely principally on comparisons to punitive awards

in similar cases to determine if the jury's punitive award here was

unconstitutionally excessive. *See Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019).[5]

Of all the comparative cases cited by the parties, only two, *Cleveland v.

Curry*, 2014 WL 690846, at *1 (N.D. Cal. Feb. 21, 2014) and *Shepherd v. Fischer*,

2018 WL 3122053, at *2 (S.D.N.Y. June 26, 2018) involved sexual assaults

committed by correctional officers during clothed-body searches of inmates.  The

correctional officer's conduct in *Curry* was very similar to Kuschel's actions here.

The jury in *Curry* found the officer liable under the Eighth Amendment and § 1983

for "squeez[ing] and grabb[ing]" five inmates' genitals "in the course of

conducting clothed-body searches on them between 2006 and 2008."  2014 WL

---

assaults.  As noted, the jury explicitly rejected Drumgo's testimony that he was
injured by Kuschel's behavior.

[5] With respect to the second guidepost, "[t]he Supreme Court has . . . cautioned . . .
'that in practice, few awards exceeding a single-digit ratio between punitive and
compensatory damages, to a significant degree, will satisfy due process.'"  *CGB
Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190, 192 (3d
Cir. 2007) (quoting *State Farm*, 538 U.S. at 425).  But "the single-digit ratio
analysis does not apply to punitive awards accompanying nominal damages
awards."  *Jester*, 937 F.3d at 242.  Rather, for nominal damages cases, the Third
Circuit has directed district courts to rely on "comparisons to punitive awards in
similar cases [to] help [them] assess the reasonableness of a punitive award [.]"  *Id.*

690846, at *1.  The jury awarded $2,000 in compensatory damages to three of the

inmates, $5,000 in compensatory damages to the fourth inmate, and $10,000 in

compensatory damages to the fifth inmate.  *Id.*  It also awarded $5,000 in punitive

damages to each inmate.  *Id.*  The Court rejected the defendant's constitutional

challenge to the punitive awards, finding that "[t]here is no glaring disparity

between the compensatory damages awarded here (between $2,000 and $10,000),

and a punitive damages award of $5,000."  *Id.* at *10.

The conduct of the two correctional officer defendants in *Shepherd* was

more egregious than the officer's actions in *Curry* and Kuschel's actions here.  For

example, one of the officers in *Shepherd* "rammed" a metal wand between the

plaintiff's "butt cheeks" while the other officer handcuffed the plaintiff and then

"grabbed [his] testicles, and kept on squeezing [his] genital area for 30 to 50

seconds."  2018 WL 3122053, at *2–*3 (internal quotation marks omitted;

alterations in the original).  The defendants in *Shepherd* also threatened to anally

rape the plaintiff and taunted him repeatedly.  *Id.* at *3.  The jury in *Shepherd*

awarded the plaintiff one dollar in nominal damages and $20,000 in punitive

damages.  *Id.* at *1.  In upholding the damages award, the court noted that the

defendants' "conduct was violent in nature, involved a threat of serious sexual

violence, and was accompanied by comments suggesting that [they] [were] acting

maliciously."  *Id.* at *7.

A20

I was able to find one other case where a prison guard was found liable for sexually assaulting a fully clothed prisoner. In *Morton v. Johnson*, 2015 WL 4470104 (W.D. Va. July 21, 2015), the court entered a default judgment against a male prison guard accused by a female inmate of "touch[ing] her breast" and "rub[bing] down [her] stomach . . . to [her] private area" where he "felt [her] up" as he "hugged" her. *Id.* at *1. The court awarded the inmate $2,000 in compensatory damages and "$5,000 in punitive damages to punish [the defendant] for his reprehensible conduct and to deter other correctional officers from committing similar abuses against the individuals placed in their custody." *Id.* at *9.

Based on my review of these cases and the cases cited by both parties, I find that the jury's punitive award in this case was excessive and violated Kuschel's due process rights. The punitive damages award in *Shepherd*—$20,000—was 96% less than the punitive award in this case even though the officers' conduct in *Shepherd* was much more violent, threatening, and malicious than Kuschel's conduct. A $500,000 award under the circumstances of this case shocks the conscience and grossly exceeds what was required to serve the needs of deterrence and punishment. Leaving in place such an exorbitant award will also dissuade correctional officers from conducting searches they would otherwise perform and lead to the introduction of weapons and contraband into Delaware's prisons. It

18

A21

will also deter competent professionals from seeking out correctional officer positions. All told, allowing a $500,000 punitive award to stand will result in increased security risks in an already dangerous environment.

In my view, $5,000—the same amount awarded in *Curry* and *Morton*—is an appropriate punitive award in this case. Kuschel's actions were on par with the defendants' conduct in those cases, and a $5,000 penalty is adequate to punish Kuschel for his actions and deter others from engaging in the type of conduct for which he was found liable. A $5,000 punitive award is also in line with punitive awards imposed against correctional officers for more egregious sexual assaults against inmates. *See, e.g., Lagarde v. Metz*, 2017 WL 457654, at *1–*2, *6 (M.D. La. Feb. 2, 2017) (awarding plaintiff inmate $1 in nominal damages and $1,000 in punitive damages where defendant demanded oral sex from the plaintiff, attempted to penetrate the plaintiff's anus with a broomstick, and threw the plaintiff to the ground); *Carrington v. Easley*, 2011 WL 2132850, at *1, *4–*5 (E.D.N.C. May 25, 2011) (awarding plaintiff $1 in nominal damages and $5,000 in punitive damages where defendant grabbed the plaintiff's penis and attempted to perform oral sex on him); *McKinley v. Trattles*, 732 F.2d 1320, 1322–23, 1327–28 (7th Cir. 1984) (affirming the jury's finding that two defendants conducted unconstitutional strip searches of plaintiff inmate, including by putting their fingers in plaintiff's anal cavity, but setting aside the jury's punitive damages award of $15,000 and

19

A22

suggesting that the district court enter a punitive damages award of no more than

$6,000); *see also Oxendine-Bey v. Harihan*, 2015 WL 5331809, at *3–*4, *8–*9

(E.D.N.C. July 22, 2015) (awarding plaintiff inmate $5,000 in compensatory

damages and $5,000 in punitive damages where defendant, a prison medical

provider, sexually fondled an inmate multiple times during medical examinations),

*report and recommendation adopted*, 2015 WL 5330571 (E.D.N.C. Sept. 14,

2015).

Drumgo argues that "[c]ourts have upheld punitive damages awards over

six-figures where a correctional officer sexually assaulted an inmate." D.I. 224 at

13. But the assaults in the six cases he cites in support of this assertion are not

comparable to the assault in this case. In five of the cases, the defendant raped the

plaintiff. *See Doe v. United States*, 2018 WL 2431774, at *6 (D. Ariz. May 30,

2018) (noting that male prison guard defendant "repeatedly raped [female inmate

plaintiff] over several months"); *Etters v. Shanahan*, 2013 WL 787344, at *1–*3

(E.D.N.C. Feb. 6, 2013) (noting that male correctional officer defendant assaulted

female inmate plaintiff repeatedly, including "one incident in the laundry room

where [defendant] grabbed her by the hair, pulled her back into a conference room,

and had her perform oral sex," "another incident by a cleaning closet, [where] he

raped her vaginally and anally," and a third incident where he "handcuffed

[plaintiff] and, apparently after forcing her to have oral sex, was attempting to

20

A23

anally rape her when he was interrupted by a bell indicating that another officer was coming"), *report and recommendation adopted*, 2013 WL 792834 (E.D.N.C. Mar. 4, 2013); *Ortiz v. Lasker, Jr.*, 2010 WL 3476017, at *1 (W.D.N.Y. Aug. 30, 2010) (noting that male defendant correctional officer attempted to rape female inmate plaintiff on one occasion and then, in second incident, "tore off some of her clothing and did have sexual intercourse with her" against her will on a table); *Cash v. County of Erie*, 2009 WL 3199558, at *1 (W.D.N.Y. Sept. 30, 2009) (noting that male prison guard defendant had sexual intercourse with female pretrial detainee plaintiff without her consent); *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1231 (D. Colo. 2009) (noting that female inmate plaintiff was victim of defendant correctional officer's "ongoing sexual abuse and a brutal rape"). Moreover, in three of these cases the punitive damages awards were half of or less than half of the punitive award in this case. *See Doe v. United States*, 2018 WL 2431774, at *5 ($200,000 punitive award); *Etters*, 2013 WL 787344, at *1–*3 ($100,000 punitive award); *Ortiz*, 2010 WL 3476017, at *1 ($250,000 punitive award); *Cash*, 2009 WL 3199558, at *1 ($150,000 punitive award).

In the only nonrape case cited by Drumgo, the court awarded the plaintiff $350,000 in compensatory damages and $200,000 in punitive damages. *See Doe v. Green*, 2021 WL2188534, at *1–*2 (S.D.N.Y. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 2188148 (S.D.N.Y. May 28, 2021). But even

though the punitive damages award in *Green* was less than half of what the jury

awarded Drumgo, the conduct of the defendant in *Green* was much more

reprehensible than Kuschel's fleeting groping of Drumgo's genitals during a

clothed body search.  The defendant in *Green* sexually assaulted the plaintiff by

"grabbing, pushing, . . . kissing, biting, and licking [her] upper body, including her

exposed breasts; and putting his hand down [her] shorts and fondling her genitalia

and groin . . . while trapping [her] against the wall with his body."  *Id.* at 2.

In sum, a $5,000 punitive damages award is consistent with *State Farm*'s

"guideposts" and achieves an appropriate level of punishment and deterrence under

the facts of this case.  Such an award constitutes significant financial punishment

for a Delaware correctional officer.  *See* State of Delaware, Delaware Department

of Correction, Recruiting, Correctional Officer Pay Scales FY 2022,

https://doc.delaware.gov/assets/documents/FY22_U10_Payscales.pdf (last visited

Aug. 23, 2022) (showing that annual salaries for the fiscal year 2022 for Delaware

correctional officers range from $39,880 to $79,130).  And deterrence is not an

issue for Kuschel, who is now retired.  Nor is it an issue for correctional officers in

general at Vaughn.  On the contrary, Drumgo, Burroughs, and Lopez each testified

that Kuschel was the only officer who ever groped them inappropriately during a

frisk search, and Walker testified that he had never been groped by a correctional

A25

officer during a search.  *See* Tr. 114:14–16 (Drumgo); 210:2–7 (Walker); 226:18–21 (Burroughs); 326:7–13 (Lopez).

## IV.   CONCLUSION

For the reasons stated above, I find that the admission of Burroughs's testimony was not erroneous but that the jury's punitive damages award of $500,000 is constitutionally excessive, manifestly unjust, and should be reduced to $5,000.  I will therefore deny Defendant's motion insofar as it seeks a new trial, grant the motion insofar as it seeks to amend the judgment, and reduce the punitive damages award to $5,000.

The Court will enter an Order consistent with this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DE SHAWN DRUMGO,

                          Plaintiff,

           v.                              Civil Action No. 14-1135-CFC

SGT. WILLIAM KUSCHEL

                          Defendant.

---

## ORDER

At Wilmington this Twenty-fourth day of August in 2022:

For the reasons set forth in the Memorandum Opinion issued this day, **IT IS HEREBY ORDERED** that Defendant William Kuschel's Renewed Motion for Judgment as a Matter of Law and to Alter or Amend Judgment, or in the Alternative, for a New Trial (D.I. 217) is **DENIED** insofar as it seeks a new trial and **GRANTED** insofar as it seeks to amend the judgment.  **IT IS FURTHER ORDERED** that the jury's punitive damages award of $500,000 is reduced to $5,000.

                                             _____
                                             CHIEF JUDGE